UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTINE DIBELLA,

            Plaintiff,

     v.

BOARD OF TRUSTEES OF THE
CALIFORNIA STATE UNIVERSITY, et
al.,

            Defendants.

Case No.  21-cv-08461-TLT


**ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
STRIKE CLASS ALLEGATIONS**

Re: ECF No. 44

      Pending before the Court is Defendants' motion to dismiss or strike class allegations in Plaintiff's second amended complaint.  ECF No. 44.  For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.  Plaintiff may file an amended complaint within 30 days of this Order.

## I.      BACKGROUND

      Plaintiff Christine DiBella is a student at California State Polytechnic University, Humboldt ("Humboldt").  Second Amended Complaint ("SAC") ¶ 2, ECF No. 36.  Plaintiff is physically disabled and requires the use of aids such as a wheelchair, walking sticks, or a cane.  *Id.*

      Upon arriving at Humboldt on August 16, 2021, Plaintiff was concerned with several alleged deficiencies in the school's accommodations for her, including, but not limited to the lack of an evacuation plan for her (*id.* ¶¶ 62–64); lack of designated accessible parking near her residence hall (*id.* ¶¶ 195–96); lack of an accessible laundry room (*id.* ¶¶ 197–98); lack of an accessible dining commons (*id.* ¶¶ 199–215); lack of accessible student life activities (*id.* ¶¶ 216–20); lack of signage and accessible restrooms (*id.* ¶¶ 221–24); and lack of accessible travel path (*id.* ¶ 229).  Plaintiff also found that many doors on the campus were excessively heavy.  *Id.* ¶¶ 225–28.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff brought this case on October 29, 2021.  ECF No. 1.  On March 4, 2022, Plaintiff

2  amended her complaint.  ECF No. 29.  In response to Defendants' motion to dismiss, Plaintiff

3  filed a SAC.  ECF No. 36.  Plaintiff brings claims against the Board of Trustees of the California

4  State University ("CSU"), the Acting Chancellor of CSU, the incoming Interim Chancellor of

5  CSU, Presidents of each of the 23 CSU campuses (collectively "Defendants" or "Trustees"): (1)

6  violation of Title II of the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*,

7  against Trustees; (2) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, against

8  Trustees; and (3) violation of the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*,

9  against the Acting Chancellor, Interim Chancellor, and CSU Presidents.  These claims are brought

10  on behalf of Plaintiff and two proposed classes, (a) the Student Housing Emergency Plan Class

11  and (b) the Classroom Emergency Plan Class:

12    **Student Housing Emergency Plan Class**: All persons with mobility
13    disabilities who: (a) are enrolled students at a CSU campus; (b) use
    wheelchairs, scooters, or other mobility aids or devices; and (c) are
14    residing or will attempt to reside in CSU student housing that is
    located on a floor that can only be accessed by use of stairs or an
15    elevator during the three years prior to the filing of this Amended
    Complaint herein through the conclusion of this action. This class of
16    persons seeks declaratory and injunctive relief.

17    **Classroom Emergency Plan Class**: All persons with mobility
    disabilities who: (a) are enrolled students at a CSU campus; (b) use
18    wheelchairs, scooters, or other mobility aids or devices; and (c) who
    are enrolled in a CSU class or will attempt to enroll in a CSU class
19    that is located on a floor that can only be accessed by use of stairs or
    an elevator during the three years prior to the filing of this Amended
20    Complaint herein through the conclusion of this action. This class of
    persons seeks declaratory and injunctive relief.

21  *Id.* ¶ 51.  Plaintiff's remaining claims are against Compass Group USA, who the parties dismissed

22  by stipulation.  ECF No. 41.  Defendants subsequently filed the instant motion challenging the

23  class allegations.  ECF No. 44.  Defendants do not challenge Plaintiff's individual claims against

24  Humboldt and agreed during oral argument that those claims were adequately pled.

25  **II.    JUDICIAL NOTICE**

26    Defendants request judicial notice of 23 exhibits and 59 websites.  ECF Nos. 44-3, 54-5.

27  Plaintiff does not oppose.

28    Exhibit 1 is a copy of the February 2018 Active Shooter Awareness Guidance from the

California Governor's Office of Emergency Services.  As this publication is readily available from a government website, the Court takes judicial notice of this exhibit as the guidance regarding active shooter awareness.

Exhibits 3 to 24 are procedures or plans related to emergencies in place at each of the CSU campuses, with the exception of CSU Sonoma.  As the SAC discusses the emergency procedures at all the CSU campuses at paragraphs 86 to 194, the Court finds that the plans and procedures are incorporated by reference.  Accordingly, the Court takes judicial notice of these exhibits.

The 59 links to websites, however, are a different matter.  Some of the links point to the same or newer versions of the above exhibits.  As it is not clear what facts Defendants are requesting judicial notice for from these websites, the Court takes judicial notice only that these websites exist but not of the information contained within.

## III.     LEGAL STANDARD

Before responding to a pleading, a party may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to the trial."  *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. Oct. 14, 2011) (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

Although class allegations are generally not tested at the pleading stage, "sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."  *Collins v. Gamestop Corp.*, No. C10-1210-TEH, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6, 2010) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery."  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citation omitted).  Just as with a motion to dismiss, the court should view the pleading sought to be struck in the light most favorable to the nonmoving party.  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

United States District Court
Northern District of California

3

1   **IV.   DISCUSSION**

2          As an initial matter, Plaintiff argues that this motion is premature and procedurally

3   inappropriate.  While some courts have found it premature to consider class allegations prior to a

4   motion for class certification, Rule 23 allows the Court to consider a motion to strike.  *See* Fed. R.

5   Civ. P. 23(c)(1)(A) (directing the Court to consider class allegations "at an early practicable

6   time"), *id.* 23(d)(1)(D) ("[T]he Court may issue orders that" "require that the pleadings be

7   amended to eliminate allegations about representation of absent persons and that the action

8   proceed accordingly.").  Courts in this District have considered similar motions.  *See, e.g.*, *In re*

9   *Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609 (N.D. Cal. 2007); *Lyons v. Bank*

10  *of Am., NA*, No. 11-CV-1232-CW, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011).  Here, the

11  Court finds that striking all of Plaintiff's class allegations prior to a motion under Rule 23 is

12  premature, given that the parties have not had an opportunity to fully brief on the requirements for

13  a class action.  *See* Fed. R. Civ. P. 23(a).  However, as Plaintiff seeks discovery across 23 CSU

14  campuses, the Court finds it appropriate to address the merits of Defendant's motion under Rule

15  12(f).  The Court does not address whether this motion is appropriate under Rule 12(b).

16          Plaintiff's class claims parallel her individual claims and are brought under Title II of the

17  ADA, Section 504 of the Rehabilitation Act, and the FHA.  Under each of these statutes, the

18  inquiry includes whether a reasonable accommodation has been made for a disabled person to

19  access a service, program, or activity.  *See* 28 C.F.R. § 35.130(b)(7)(i) ("A public entity shall

20  make reasonable modifications in policies, practices, or procedures when the modifications are

21  necessary to avoid discrimination on the basis of disability, unless the public entity can

22  demonstrate that making the modifications would fundamentally alter the nature of the service,

23  program, or activity."); *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir.

24  1999) ("There is no significant difference in analysis of the rights and obligations created by the

25  ADA and the Rehabilitation Act."); 42 U.S.C. § 3604(f)(3)(B) ("[D]iscrimination includes . . . a

26  refusal to make reasonable accommodations in rules, policies, practices, or services, when such

27  accommodations may be necessary to afford such person equal opportunity to use and enjoy a

28  dwelling.").

United States District Court
Northern District of California

4

United States District Court
Northern District of California

# I.    TITLE II OF THE ADA

The parties do not dispute that the inquiry in a Title II claim is whether there is reasonable program access.  To establish a prima facie case against a public entity for violation of ADA program access standards, a plaintiff must "(1) prove that the [facility], when viewed in its entirety, is not readily accessible to and usable by individuals with disabilities; and (2) suggest a plausible method of making the [facility] readily accessible, the costs of which, facially, do not clearly exceed its benefits."  *Pascuiti v. New York Yankees*, 87 F. Supp. 2d 221, 223 (S.D.N.Y. 1999).  The parties do not dispute that Plaintiff's claim, as it pertains to both classes, is properly under Title II of the ADA.  As Plaintiff alleged that the emergency plans for both classrooms and student housing are similarly deficient, the Court finds that both classes can be addressed together.

## A.    Whether Plaintiff Seeks Relief That the Court Can Grant

Plaintiff argues that the members of both proposed classes do not have access to emergency preparedness plans across the 23 CSU campuses because the current plans at each campus lack compliance with the four points from the Department of Justice's guidance, "ADA Best Practices Tool Kit for State and Local Governments"—***preparation, testing of preparedness, notification, and community evacuation***.  *See* SAC ¶¶ 74–75 (emphasis added).  The Court does not consider whether the Department of Justice's guidance document is incorporated into the ADA, as the parties did not brief on this issue.  Regardless, Plaintiff argues that there must be "a baseline policy in emergency plans of including people with mobility disabilities . . . that must apply to *all* CSU campuses to ensure each campus' plan is inclusive and non-discriminatory, no matter the physical layouts of buildings or how the campuses differ otherwise."  Opp'n at 9:18–23.

However, as Defendants point out, each of the 23 CSU campuses currently have individual emergency preparedness plans.  *See* Reply at 7:3–12:6 (listing online emergency resources for all 23 CSU campuses); SAC ¶¶ 86–194.  Even assuming as true Plaintiff's allegations that these plans are deficient, the Court is not persuaded that it can mandate Defendants to create a new baseline plan that spans across all 23 CSU campuses.  Even though the Court is not bound by Plaintiff's four-point plan, Plaintiff's proposed classes necessarily seek an injunction that applies to all CSU campuses.

1
2
3
4
5
6
7
8
9
10
11

United States District Court
Northern District of California

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff cites *Tennessee v. Lane* for the proposition that the Court may require a public entity to "make reasonable structural changes." *See* Opp'n at 18:11. The Supreme Court there, however, addressed the issue of whether Title II was a valid exercise of Congress's authority, not whether a district court may require the creation and implementation of a new baseline plan. *See* 541 U.S. 509, 532 (2004). Moreover, in describing "structural changes," the Court there discussed compliance with architectural accessibility standards, which, "in the case of older facilities, for which structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services." *Id.* The Court is not convinced that Plaintiff's proposed four-point plan, which does not address physical structural accommodations, is analogous with architectural accessibility standards.

Plaintiff's reliance on *Brooklyn Center for Independence of Disabled v. Bloomberg* and *Communities Actively Living Independent and Free v. City of Los Angeles* are also inapposite. In the first case, the court found that the city of New York violated the ADA, the Rehabilitation Act, and the New York City Human Rights Law "by failing to provide people with disabilities meaningful access to its emergency preparedness program." 980 F. Supp. 2d 588, 658 (S.D.N.Y. 2013). In the latter case, the Court concluded that "individuals with disabilities [were] disproportionately burdened by [Los Angeles]'s failure to consider their unique needs in the administration of its emergency preparedness program." No. 09-CV-0287, 2011 WL 4595993, at *14 (C.D. Cal. Feb. 10, 2011). In both cases, however, the issues involved a city-wide program. In contrast, the parties here do not dispute that there is no existing overarching policy regarding emergency preparedness that spans across all the CSU campuses.

Accordingly, the Court is concerned that the class allegations in the SAC do not seek relief that the Court can provide.

**B.     Whether Plaintiff's Classes Share a Common Issue**

In addition, the Court assesses, based on the information before it, whether Plaintiff alleged plausible questions common to the proposed classes. "'[C]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' which cannot

1    merely be the suffering of 'a violation of the same provision of law.'" *C.R. Educ. & Enf't Ctr.*,

2    317 F.R.D. at 100 (quoting *Gen. Tel. Co.*, 457 U.S. at 157).

3           Here, Plaintiff pled a number of alleged common questions that are restricted to Humboldt,

4    where Plaintiff attends. *See, e.g.*, SAC ¶ 55(d) ("Whether Humboldt and its parking and related

5    facilities comply with the 2010 ADA Standards for Accessible Design"); *id.* ¶ 55(k) ("Whether

6    Humboldt's housing facilities comply with the design and construction standards of the Federal

7    Fair Housing Act (24 C.F.R. § 100.205)"). These allegations, on their face, do not affect proposed

8    class members that attend schools other than Humboldt. Thus, it is unclear to the Court how

9    unnamed class members at other CSU campuses "would benefit in a tangible way from the court's

10   intervention." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 n.5 (1998) (citation

11   omitted).

12          In addition, as there currently exists no CSU-wide baseline policy, Plaintiff essentially asks

13   the factfinder to evaluate whether the emergency plan of each CSU campus is in compliance with

14   the Department of Justice's guidance. Each campus may have different compliance issues and

15   require different remedies. Thus, the Court is wary that, in effect, this case will devolve into 23

16   mini-trials. *See C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 317 F.R.D. 91, 101 (N.D. Cal.

17   2016), *aff'd*, 867 F.3d 1093 (9th Cir. 2017) ("Because Plaintiffs can point to no common

18   offending policy, proving that each of the 142 hotels violated the ADA would require 142 trials

19   within a trial."). Without a "'general policy of discrimination' that could serve as a common

20   issue," the different factual issues at each of the 23 CSU campuses may predominate. *See C.R.

21   Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1104 (9th Cir. 2017). At this time, the

22   Court finds that it has insufficient information to determine whether it can collectively address the

23   plans of 23 CSU campuses together as one program.

24          Even though Plaintiff's proposed classes may not be certifiable, Defendants' motion is

25   denied, as the Court finds that, under the circumstances, it requires additionally briefing on a Rule

26   23 motion before completely striking Plaintiff's ADA class claim.

27   **II.     SECTION 504 OF THE REHABILITATION ACT**

28          "There is no significant difference in analysis of the rights and obligations created by the

United States District Court
Northern District of California

ADA and the Rehabilitation Act." *Zukle*, 166 F.3d at 1045 n.11.  As such, the ADA discussion for the Classroom Emergency Plan Class applies equally to the Rehabilitation Act.

The Court, moreover, is unclear whether the Student Housing Emergency Plan Class has a plausible claim under the Rehabilitation Act.  Section 504 of the Rehabilitation Act prohibits discrimination against a "qualified individual with a disability" "under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Although the Court is cognizant that the CSU campuses receive federal financial assistance as it pertains to the classes offered, the SAC does not provide sufficient allegations for the Court to determine whether student housing at each of the 23 CSU campuses also receive federal financial assistance.  Accordingly, the Court strikes the Student Housing Emergency Plan Class from Plaintiff's claim under Section 504 of the Rehabilitation Act.

## III.      FEDERAL FAIR HOUSING ACT ("FHA")

The FHA was enacted to ensure fair housing.  *See* 42 U.S.C. § 3601.  For example, the statute applies to discriminatory housing practices as they apply to dwellings, which is defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families."  *Id.* § 3602(b).

While Plaintiff's claims on behalf of the Student Housing Emergency Plan Class for violation of the FHA is plausible at first glance, the Court is unclear how the Classroom Emergency Plan Class applies, as the SAC does not contain allegations that classrooms are dwellings.  Accordingly, the Court strikes the Classroom Emergency Plan Class from Plaintiff's claim under the FHA.  Even though the Court has similar concerns to Plaintiff's ADA claim regarding whether the facilities across multiple CSU campuses may be addressed collectively, the Court does not strike Plaintiff's FHA claim on behalf of the Student Housing Emergency Plan Class at this time, as the Court finds that it is premature subject to a motion under Rule 23.

## IV.      CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to strike Plaintiff's class allegations.  Plaintiff's claim under the Rehabilitation Act is stricken to the extent it is on behalf of the Student Housing Emergency Plan

Class.  Plaintiff's claim under the FHA is stricken to the extent it is on behalf of the Classroom Emergency Plan Class.  While the Court has concerns that the remaining class claims may seek relief that the Court cannot provide or lead to potential trials-within-a-trial, the Court finds that striking all of Plaintiff's class allegations is premature without a motion under Rule 23.  Plaintiff may amend all of her claims within 30 days of this Order.

This Order terminates ECF No. 44.

**IT IS SO ORDERED.**

Dated: March 23, 2023

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California